ROCKWELL MEDICAL, INC.,

    Plaintiffs,

v.                                                                 Case No. 17-10757

RICHMOND BROTHERS, INC., *et al.*,

    Defendants.

                                           /

**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Pending before the court is Plaintiff's Emergency Motion for Preliminary Injunction (Dkt. #3.) After the motion was fully briefed, the court held a hearing on May 3, 2017, where it heard argument as well as testimony by David Richmond. For the following reasons, the court will deny Plaintiff's motion.

**I. BACKGROUND**

Plaintiff alleges that Defendants formed a shareholder group in February of 2016 and have since engaged in a campaign to wrest corporate control from the founder of Rockwell Medical, Inc. ("Rockwell"), by achieving election of their nominee to the board of directors. It contends that Defendants violated Section 13(d) of the Securities and Exchange Act of 1934 by failing to register as a shareholder group at that time. Plaintiffs filed a Schedule 13D with the SEC in February of 2017 identifying themselves as a shareholder group. Plaintiffs insist that this filing was not only nearly one full year late, but also contained material misrepresentations of fact as to the number of shares over which Defendants had the ability to direct the vote. With an annual shareholder meeting

looming, Plaintiffs request this court to enter a preliminary injunction requiring Defendants to file a corrected 13D and to prohibit them from soliciting shareholder votes to allow a "cooling off" period during which time shareholders will be able to digest the new information.

In response Defendants argue that, though they engaged in negotiations with management as early as March of 2016, they did not constitute a shareholder group because they had not reached any actual agreement to act together "for the purpose of acquiring, holding, voting or disposing of" shares in Plaintiff. They also contend that their amendments to their Schedule 13D have corrected any remaining concerns. Following the hearing, they filed another supplemental Schedule 13D indicating in the complained-of field that they had the power to direct the voting of zero shares. They also advance the position that the election of a board member is not an "irreparable harm" that would justify the imposition of injunctive relief, nor does the balance of the equities or public interest. Finally, Defendants attack Plaintiff's standing to sue on behalf of shareholders in this action.

Plaintiff replies that emails exchanged in March of 2016 indicate that the Defendants were acting as a single group with a shared purpose of taking some portion of control over the company's management. They also view the supplemental 13D filings to be inadequate, demanding that Defendants include language stating that their supplemental filings were necessary as a result of a misstatement of fact on earlier filings rather than merely an effort to resolve the instant litigation.

The court held a status conference on May 9, 2017, following the filing of Defendants' most recent Schedule 13D addressing voting power. The conference

concerned the parties' competing briefings discussing whether the amendment renders at least this portion of the motion for preliminary injunction moot. (Dkts. ##53, 54, 57.) The court directed the parties to confer in an effort to arrive at an agreed supplemental filing, but they have since indicated that agreement is not possible.

## II. STANDARD

In *Silverman v. Summers*, the Sixth Circuit described the rubric by which district courts should assess requests for preliminary injunction:

> The district court must consider and balance four factors in ruling on an application for a preliminary injunction: 1) whether the plaintiff has a strong likelihood of success on the merits; 2) whether the plaintiff would suffer irreparable injury in the absence of the injunction; 3) whether the injunction would cause substantial harm to others; and 4) whether the injunction would serve the public interest.

28 F. App'x 370, 372-73 (6th Cir. 2001) (citing *Sandison v. Michigan High School Athletic Ass'n, Inc.*, 64 F.3d 1026, 1030 (6th Cir.1995)).

## III. DISCUSSION

Plaintiffs do not appear to address Defendants' statutory standing argument. The court will not decide the issue at this stage, as denial of Plaintiff's request for a preliminary injunction is warranted for other reasons. *See CSX Corp. v. Children's Inv. Fund Mgmt. (UK) LLP*, 654 F.3d 276, 284 (2d Cir. 2011) ("[A]n issuer has an implied right of action to seek injunctive relief for a violation of section 13(d)[.]").

### A. Voting Power and Mootness

Plaintiffs' request that the court require the submission of a supplemental Schedule 13D regarding voting power is moot in light of Defendants' recent filing. "In general a case becomes moot 'when the issues presented are no longer live or the

3

parties lack a legally cognizable interest in the outcome.'" *Kundrat v. Halloran*, 206 F. Supp. 2d 864, 868 (E.D. Mich. 2002) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)). The arguably misleading figure that had previously indicated that Defendants exercised sole voting power over 10% of Rockwell shares by virtue of the shares held by their clients, as Richmond testified that he believed that the clients would rely on his voting recommendation as in the past, has been amended to reflect that Defendants have sole voting power over "zero" shares. (Dkt. #53-1, Pg. ID 1981.)

The court is not convinced that shareholders will benefit from yet another filing which adopts language proposed by Plaintiff or a "cooling off" period in light of the recency of this amendment. If Plaintiff wishes to characterize this filing as suspicious in its own publications to shareholders, it is certainly free to do so without assistance from the court. But neither the inclusion of the proposed language nor a limitation on Defendants' campaign for a board position will, at this point, further any identifiable public interest beyond what Plaintiff could accomplish on its own, though they might result in substantial harm to Defendants and shareholders by inducing a loss of a board election by an insurgent shareholder group that could otherwise have won. As Mr. Richmond testified at the hearing, such challenges are expensive to mount. No guarantee exists that, should this court issue an order hobbling Defendants' efforts, the high costs and collective action problems attendant to such proxy fights will not dissuade shareholders from wading once more into the breach at the next annual shareholders' meeting. *See* Edward B. Rock, *The Logic and (Uncertain) Significance of Institutional Shareholder Activism*, 79 Geo. L.J. 445, 453-57 (1991) (describing the economics of rational shareholder apathy). Plaintiff will not suffer irreparable harm, and

4

the likelihood of success on the merits does not factor strongly in this instance where the materiality of the allegedly false disclosure is somewhat questionable, at least as far as it affects the voting decisions of the average shareholder in a proxy contest.

**B. Shareholder Group Theory**

Plaintiff's argument for the formation of a shareholder group prior to February of 2017 when the Defendants entered into the Joint Solicitation Agreement–attached to their first Schedule 13D–focuses on emails and other communications among Defendants and between Defendants and management at Rockwell. The content of these communications suggested that the Defendants were displeased with the way that the company was being run and were approaching management as a group to seek reforms. The rule governing the requirement that a shareholder group file a Schedule 13D states that:

> When two or more persons agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer, the group formed thereby shall be deemed to have acquired beneficial ownership, for purposes of sections 13(d) and (g) of the Act, as of the date of such agreement, of all equity securities of that issuer beneficially owned by any such persons.

17 C.F.R. § 240.13d-5(b)(1).

The evidence presented thus far does not suggest a likelihood of success in establishing that Defendants "agree[d] to act together for the purpose of acquiring, holding, voting or disposing of" shares in Rockwell prior to their formal agreement. The testimony by Mr. Richmond at the hearing describes a loose, informal group of disgruntled shareholders grousing about what they viewed to be shortcomings in Rockwell's management and exerting pressure in the hopes of obtaining a better return.

*See CSX*, 654 F.3d at 284 ("Even if many of the parties' 'activities' were the result of group action, two or more entities do not become a group within the meaning of section 13(d)(3) unless they 'act as a . . . group for the purpose of acquiring . . . securities of an issuer.' 15 U.S.C. § 78m(d)(3).").

At the hearing, counsel for Defendants also explained that "if this was a shareholder group, it was the worst organized group in history" as several of the alleged members subsequently took action inconsistent with the supposed purposes of the effort, such as voting against the board member nominated by Defendants. Plaintiff may well succeed on its underlying claim after the benefit of additional discovery, but at this stage the court does not find that the likelihood of success prong of the analysis strongly favors the issuance of an injunction. Further, the court is left adrift in trying to answer whether, even assuming an earlier Schedule 13D was due, this information would be material to shareholders weighing options in a proxy fight.

The second, third, and fourth factors mirror the conclusions in the court's analysis of the voting shares question. As it is unclear that requiring Defendants to submit an amended Schedule 13D will be of any significant benefit to any shareholder, the court, cognizant of the chilling effect that the risk of burdensome litigation has on potentially beneficial shareholder activism, cannot justify the issuance of a preliminary injunction requiring an amended Schedule 13D or a "cooling off period" at this time. Just as with the voting power issue, even without a subsidy from this court, Rockwell is perfectly capable of informing undecided shareholders as to its belief that Defendants had assembled a shareholder group and flouted the deadline to file a Schedule 13D, then

6

allowing the shareholders to decide whether such misdeeds outweigh any perceived benefit of the insurgency.

## IV. CONCLUSION

IT IS ORDERED that Plaintiff's Motion for Preliminary Injunction (Dkt. #3) is DENIED.

 s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: May 24, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 24, 2017, by electronic and/or ordinary mail.

s/Lisa Wagner
Case Manager and Deputy Clerk
(810) 984-2056

S:\Cleland\JUDGE'S DESK\C2 ORDERS\17-10757.ROCKWELL.DENYPrelimInjunction.bss.wpd